## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **In re Subpoena Duces Tecum to** | ( | Case No. 2:21-mc-00002 |
| **Tammy Risner** | ( | Judge James L. Graham |
| | ( | Magistrate Judge Kimberly A. Jolson |

### OPINION AND ORDER

Tammy Risner ("Movant") moves the Court for an award of $52,382.74 for attorney's fees and costs associated with a motion she filed seeking to quash a subpoena that was ultimately withdrawn. (Doc. 11). The matter is fully briefed and ripe for review. (Doc. 11, 13, 14). For the reasons that follow, the Motion for Attorney's Fees and Costs is **DENIED**. (Doc. 11).

### I. Background

Movant is a resident of Waynesfield, Ohio. Until approximately September 2020, she worked as a distributor for It Works!, Marketing, Inc. ("It Works!"), a company that sells health and beauty products through independent distributors. (Doc. 1-1, Risner Decl. ¶¶ 1, 2). Currently, Movant works as an independent contractor (referred to as a "Marketing Executive") for Melaleuca, Inc. ("Melaleuca"). (*Id.* ¶ 3).

It Works! filed an action against Melaleuca and fifteen other former It Works! distributors ("the Distributor Defendants") in a case docketed as *It Works! Marketing, Inc. v. Melaleuca Inc., et al.*, 8:20-cv-01743, in the United States District Court for the Middle District of Florida ("the Florida action"). In the Florida action, It Works! alleges that Melaleuca and the Distributor Defendants misappropriated It Works!'s trade secrets and violated non-solicitation and non-disclosure agreements when they solicited current It Works! distributors to leave It Works! and join Melaleuca. Movant is not a party to the Florida action.

On December 28, 2020, It Works! issued subpoenas to Movant and 46 other third parties across the country commanding the production of documents related to claims it alleges in the Florida action. It Works! issued a subpoena to Movant because it believed that one of the Distributor Defendants might have improperly solicited her to work for Melaleuca given the nature of their business relationship, the timing of Movant's departure from It Works!, and because Movant became an independent contractor for Melaleuca after she left It Works!. (Doc. 13-3, at PAGEID # 1163). The subpoena issued to Movant commanded her to produce documents at a lawyer's office in Columbus, Ohio on January 27, 2021. (Doc.1-1, at PAGEID # 20). The cover letter that accompanied the subpoena indicated, however, that Movant could comply by emailing the documents to It Works!'s counsel instead. (Doc. 1-1, at PAGEID # 19). Although the subpoena was issued to Movant on December 28, 2020, it was not served on her until January 19, 2021, because the server had difficulties locating her rural home. (Doc. 11-6, at PAGEID # 1017). By the time the subpoena was served on January 19, 2021, Movant had only eight days to respond. (Doc. 1-1, Risner Decl. ¶ 4).

Meanwhile, in the Florida action, Melaleuca moved the District Court for a stay of third-party discovery. But on January 20, 2021, Melaleuca's motion to stay was denied. (Doc. 7-10, 7-11).

What transpired next is the subject of detailed discussions. To summarize, Melaleuca's counsel contacted the 47 subpoenaed parties to determine if they were interested in engaging Melaleuca's counsel to represent them for purposes of responding to the subpoenas. (Doc. 11-4, at PAGEID # 1011–12). In emails exchanged by counsel for It Works! and Melaleuca on January 27, 2021, Melaleuca's counsel indicated that it had been asked, at that point, to represent some of the third parties, including Movant, whose production was due that same day. (*Id*.). Melaleuca's

counsel also asked It Works!'s counsel to refrain from sending couriers to retrieve documents from any subpoenaed third parties while it was attempting to obtain engagements. (*Id*.). It Works!'s counsel refused to acquiesce to that request in writing. (Doc 11-4, at PAGEID # 1010–11). It appears, however, that on January 27, 2021, It Works!'s counsel attempted to let the courier service know not to deliver any correspondence to Movant when going to Movant's house that day to retrieve any documents she chose to produce. (Doc 13-3, at PAGEID # 1159; Doc, 11-6, at PAGEID # 1017–18). Unfortunately, that message did not reach the courier who travelled there and left a letter asking Movant to produce documents in the next two days or face possible legal action. (Doc. 1-1, at PAGEID # 28).

On January 28, 2021, Movant, represented by Melaleuca's counsel, moved to quash the subpoena. (Doc. 1). In that motion, Movant asserted that the subpoena failed to allow her reasonable time for compliance, was premature given the procedural posture of the Florida case, and posed an undue burden given its overbreadth. (*Id*.).

On January 30, 2021, It Works!'s counsel emailed Melaleuca's counsel and indicated that it was willing to confer about a number of items, including a reasonable production date, and clarified that even though the subpoena sought "all communications" Movant had with others about, It Works!, in fact, only subset of such communications were sought. (Doc. 11-6, at PAGEID # 1017).

On February 2, 2021, the Court conducted a telephonic status conference and asked counsel to attempt to resolve issues related to the subpoena before engaging in protracted briefing. And it appears that the parties did just that. In emails exchanged from February 2, 2021, until February 9, 2021, Melaleuca's counsel indicated that Movant did not have any responsive documents and responded to questions from It Works!'s counsel seeking additional information to validate that

representation. (Doc. 11-7, at PAGEID # 1023–26). On February 9, 2021, It Works! informed the Court that it had agreed to withdraw the subpoena. (Doc. 10). Nevertheless, five days later, Movant filed the instant motion seeking $52,382.74 in fees and costs pursuant to Federal Rule of Civil Procedure 45(d)(1). (Doc. 11).

## II. Discussion

Rule 45 of the Federal Rules of Civil Procedure permits parties in legal proceedings to command non-parties to attend depositions; produce documents, electronically stored information, or tangible items; and permit the inspection of premises. Fed. R. Civ. P. 45(a)(1)(iii). But that subpoena power is not without limits. Subpoenas must strictly comply with technical requirements described in Rule 45. A subpoenaed party can object to a subpoena duces tecum within fourteen days after it is served or by the time specified for compliance, whichever is earlier. Fed. R. Civ. P. 45(d)(2)(B). A subpoenaed party can also move to modify or quash any type of subpoena. Fed. R. Civ. P. 45(d)(3).

Moreover, and of relevance here, Rule 45(d)(1) requires parties who issue subpoenas to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Rule 45(d)(1) requires courts to "enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id*. What constitutes an "undue burden" is assessed on a case-by-case basis. *In re: Mod. Plastics Corp.*, 890 F.3d 244, 250–51 (6th Cir. 2018). Factors considered include "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id*. (citing *Am. Elec. Power Co., Inc. v. United States*,

1919 F.R.D. 132, 136 (S.D. Ohio 1999) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y. 1996)).

Movant contends that It Works! breached its Rule 45(d)(1) duty.  She asserts that its subpoena was unduly burdensome because Movant was "confronted by a hostile agent of It Works! at her home, demanding documents" and she "had no choice but to file and pursue a Motion to Quash to obtain the proper resolution in this case."  (Doc. 11, at PAGEID # 987; Doc. 14, at PAGEID # 1177).  The Court is not convinced, however, that these burdens were undue.

First, nothing in the record indicates that the courier was in any way hostile or harassing.  Movant states only that an It Works! representative came to her house to collect documents on January 27, 2021, and left a letter with her.  (Doc. 1-1, Risner Decl. ¶ 6).  That letter, signed by It Works!'s counsel, arguably should not have been delivered to Movant after she had engaged counsel.  Nevertheless, the record reflects that It Works!'s counsel was not told that Melaleuca's counsel was representing Movant until shortly after midnight on January 27, 2021—the same day that subpoena commanded production.  (Doc. 11-4, at PAGEID # 1011–12).  Counsel for It Works! also apparently informed the courier service that it should not leave a letter at Movant's house that day, but given the timing, that directive did not reach its intended target.  In any event, the Court cannot conclude that a one-time contact consisting of delivering a letter constitutes the type of burden that can be considered excessive or intemperate.

Second, the Court is not convinced that Movant "had no choice but to file a Motion to Quash," and that its filing, therefore, constitutes a burden imposed by the subpoena.  Movant had other options.  For instance, Movant could have filed a motion to modify the subpoena's compliance date given that counsel had just been retained and there had been insufficient time to analyze the subpoena.  In addition, on January 27, 2021, Melaleuca's counsel informed It Works!'s

5

counsel that it had been engaged to represent Movant for purposes of responding to the subpoena, but never mentioned that Movant would be unable to respond to the subpoena that day. In fact, Melaleuca's counsel chose not to provide any specific information about Movant on January 27, 2021, other than to say that she was one of many third parties that had engaged Melaleuca's counsel. In short, other avenues were available to Movant, including moving to modify the subpoena or informing It Works! counsel that Movant needed additional time to respond. Moving to quash was, therefore, a choice of action rather than an inexorable burden.

Movant also claims that the subpoena was unduly burdensome because it allowed her only eight days to respond. The Court agrees that in the abstract, that amount of time does not seem reasonable. Undue burden is, however, a fact-specific inquiry. In this case, Movant does not have any responsive documents and her response to the subpoena would have so stated. It is thus unclear if eight days was patently unreasonable in this particular instance. The Court acknowledges that Movant initially might have been unable to determine that she did not have any responsive documents given that the subpoena, as drafted, sought a broader universe of documents. Indeed, Movant also claims that the subpoena was unduly burdensome because of its overbreadth. Nonetheless, "[w]hile failure to narrowly tailor a subpoena may be a ground for sanctions, the district court need not impose sanctions every time it finds a subpoena overbroad; such overbreadth may sometimes result from normal advocacy." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013).

At any rate, Rule 45 provides that a party who issues a subpoena must take "reasonable steps" to avoid imposing such a burden. Thus, when an issuing party engages in good faith negotiations to resolve conflicts over subpoenas and to avoid imposing undue burdens, courts have declined to impose Rule 45 sanctions in the absence of other aggravating factors. *See e.g.*, *Tiberi*

6

*v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994) (stating that Rule 45 provides for sanctions against "one issuing a vexatiously overbroad subpoena" but reversing sanctions awarded where a party engaged in "sufficient good faith efforts to negotiate reasonable parameters on the subpoena"). Here, It Works!'s indicated on January 30, 2021, that it would extend the production due date and that it sought a narrower set of documents. (Doc. 11-6, at PAGE ID # 1017). After Movant indicated that she had no responsive documents, It Works! agreed to withdraw the subpoena. In light of these negotiations, the Court cannot conclude that It Works! failed to take reasonable steps to avoid unduly burdening Movant. And although, ideally, such negotiations would have taken place prior to Movant's motion to quash, they could have also taken place after a motion to modify or an informal request for an extension.

    The cases cited by Movant do not undermine any of the Court's conclusions. They stand for the unsurprising proposition that sanctions may be warranted where conduct is egregious. And they also suggest that even when circumstances are exceptionally egregious, awards fall far short of the $52,382.74 amount that Movant seeks. For example, in *Libertarian Party of Ohio v. Husted*, the plaintiff successfully moved to compel documents from a third party and sought fees in relation to its motion to compel. No. 2:13-cv-953, 2017 WL 2544084, at *5 (S.D. Ohio June 12, 2017). The third party then subpoenaed billing records from plaintiff's counsel so that it could purportedly evaluate the fees that were sought. *Id*. Plaintiff's counsel moved to quash and sought fees for having to do so. *Id*. The court found that an award of $1,500 was warranted because the overbroad subpoena was a thinly-veiled attempt to badger plaintiff's counsel instead of an honest endeavor to assess plaintiff's counsel's fee request. *Id*. In *Mann v. University of Cincinnati*, the defendant, a university, subpoenaed a student plaintiff's medical records from its health clinic with a cover letter indicating that those records could be produced early. Nos. 95–3195, 95–3292, 1997 WL

7

280188, at * 4 (Table) (6th Cir. May 27, 1997). But when the defendant's counsel served the subpoena on the plaintiff's counsel, she failed to include that cover letter, and thus failed to alert plaintiff to the possibility of early production. *Id*. In addition, the defendant's counsel visited the college's health clinic and inspected and copied the plaintiff's medical records without informing plaintiff's counsel or the court that she had done so during a status conference about the subpoena. *Id*. An award of $5,807.45 in actual costs and punitive damages to the student plaintiff was affirmed. *Id*. at *6. Finally, in *Satija v. Permanent General Assurance Corp.*, a plaintiff subpoenaed a party to appear at trial and refused to withdraw the subpoena after the subpoenaed party objected to it even though the court had already indicated in two prior rulings that the subpoenaed party did not possess personal knowledge about the subject matter of the case. No. 1:13-cv-00082, 2014 WL 12591693, at * 1 (N.D. Ohio April 30, 2014). Ultimately, the subpoenaed party was awarded $1,670.25 in attorneys fees. *Id*. at *3.

An award of sanctions under Rule 45(d)(1) is left to the Court's discretion. *See In re: Mod. Plastics Corp.*, 890 F.3d at 51 (reviewing denial of sanctions under abuse of discretion standard). *See also Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*, No. 2:15-CV-3023, 2018 WL 3358641, at *13 (S.D. Ohio July 10, 2018). In this case, the Court does not, in its discretion, find that sanctions are warranted—the subpoena did not impose undue burdens and It Works! took reasonable steps to avoid such an imposition.

### III. Conclusion

For these reasons, the Motion for Attorney's Fees and Costs is **DENIED**. (Doc. 11).

**IT IS SO ORDERED.**

Date: March 29, 2021 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

8